WILLIAM WHEELER and another *vs.* FRANK DAY and another, and Garnishees.

May 16, 1877.

**Garnishment—Contract by Garnishees to pay Defendant for Logs on Delivery in Boom.**—The defendants and the garnishees entered into a contract, by the terms of which the defendants were to deliver to the garnishees a quantity of logs, to be delivered in a designated boom, for an agreed price per 1,000 feet. In this action the garnishees are sought to be charged for an unpaid balance of the price of the logs, which balance was not due, under the contract, until the logs were delivered in the boom. As there is nothing in the special facts of the case tending to show that defendants were in any way relieved from their obligation to deliver the logs in the boom, or any acceptance of the logs, without such delivery, in satisfaction of the contract, and as it does not appear that the logs have ever been delivered in the boom, *held*, that the garnishees are (under Gen. St. c. 66, §§ 153, 154) not chargeable for the balance mentioned.

This action was brought in the court of common pleas of Hennepin county, against Frank Day and J. H. Murphy, defendants, and S. D. Todd and C. D. Haven, copartners as Todd & Haven, were summoned as garnishees. The

appeal is. taken by the garnishees from the judgment entered against them on their disclosure, pursuant to order of *Young*, J.

*Lochren, McNair & Gilfillan*, for appellants.

*Woods & Merrill*, for respondents.

BERRY, J. By a written contract, dated October 8, 1874, the defendants and garnishees agreed as follows:

The defendants agreed to sell and deliver to the garnishees, in the booms of the Mississippi & Rum River Boom Company, in the spring of 1875, 800,000 to 1,200,000 feet of selected pine logs, to average not more than three and one-half logs to the 1,000 feet, the logs to be banked, on the upper Mississippi river, so as to be conveniently marked, and to be marked with the marks designated in the agreement. The garnishees agreed to pay defendants for the logs to be delivered, at the rate of $8.75 per 1,000 feet, as follows: $250 at the time of the execution of the agreement; $500 during November next ensuing; 50 cents per 1,000 feet upon the amount delivered when one-half of the whole amount of logs was banked; 50 cents more per 1,000 feet when the whole amount of logs was banked; and the further sum of $1 per 1,000 when all the logs were in the booms; all stumpage due upon the logs to be paid by the garnishees, and the amount so paid to be deducted from the remainder due the defendants; the amount due, after the payment above agreed to be made by the garnishees, less amount paid and due for stumpage, to be paid, one-third in three months, one-third in four months, and one-third in six months, after the logs were delivered in the boom. It was further agreed that, in case defendants, by reason of sickness, injury, negligence, or other cause, should fail to diligently prosecute and fulfil the contract, then the garnishees might enter upon the lands, and take possession of and use the teams, tools, camp equipage, and all utensils employed in cutting and delivering said logs, and fulfil the agreement at defendants' cost and expense.

It was further agreed that the logs should be scaled on the bank by the surveyor general or his deputies.

It appeared from the disclosure of the garnishees that, at the time of the service of the summons upon them, (May 28, 1875,) the garnishees had selected, under the contract, 328,000 feet of logs, amounting, at the contract price, to $2,870 ; that this quantity of logs had been scaled to them, and marked in accordance with the contract ; that the garnishees had agreed to pay for driving the logs, and that, on September 9th, they had paid $300 for the same.   It did not appear that any of the logs had ever arrived in the boom. It did appear that, at the time of the service of the summons upon them, the garnishees had paid the defendants the sum of $1,161.34, which was more than was then due under the contract, and had agreed to pay the driving account of $300, besides stumpage to the amount of $959.50.

By the terms of the contract, then, the garnishees owed the defendants nothing at the time of the service of the garnishee summons, and they would owe them nothing until the logs were delivered in the booms.   Looking, then, at the contract alone, the garnishees were not chargeable, because our statute of garnishment provides that " money * * * due * * * to the defendant may be attached * .* * before it has become payable, provided it is due or owing absolutely, and without depending on any contingency," and that " no person * * * shall be adjudged a garnishee * * * by reason of any money * * * due to the defendant, unless, at the time of the service of the summons, the same is due absolutely, and without depending on any contingency."   Gen. St. c. 66, §§ 153, 154.

But although admitting that, under the terms of the contract, the logs must be driven into the booms before the defendants would be entitled to receive full pay for them, the court below seems to have been of the opinion that the agreement of the garnishees, prior to the service of the

summons, to pay for the driving, and their subsequent payment for the same, operated to modify the contract in the respect mentioned, and consequently to render the garnishees chargeable. "Under the condition of the contract," says the court, "the garnishees were at liberty, on failure of the defendants at any time to prosecute the work, to take possession of all logs, and complete the contract, charging defendants with the expense. At the time, then, of the scaling and selecting of the logs, the title to the same vested in the garnishees, and their liability became absolute for the contract price of the logs, less the expense of driving, which they had assumed, and which amounted to $300."

The court seems to have proceeded upon the theory that, by agreeing to pay for driving the logs, and subsequently paying for such driving, the garnishees had released the defendants from driving them into the booms, and had accepted the logs banked, and without delivery in the booms, in full satisfaction of the contract, so that their liability to defendants had become absolute, and had in effect agreed to pay for them whether they reached the boom or not. But this theory is entirely unsupported by any basis of facts. There is nothing in the case tending to show that the agreement to pay for driving, or the payment therefor, or any other fact, operated, or was intended to operate, to release the defendants from their obligation to drive the logs into the boom, or to make out the acceptance or agreement spoken of. The court below, therefore, erred in its conclusion that the liability of the garnishees had become absolute at the time of the service of the summons, and in adjudging them chargeable. The money due (to use the statutory word) from them to defendants was not, at the time of service, "due absolutely, and without depending on any contingency." The judgment against the garnishees must therefore be reversed.

Ordered accordingly.